## MARY L. KING *vs.* MOSES R. HAMILL.

*Injunction to Restrain Violation of Municipal Ordinance—Stables—Nuisance.*

The violation of a municipal ordinance will not be restrained by injunction at the instance of a party who does not show that such violation will work some special or irreparable injury to him.

Since a stable for horses in a city or village is not a nuisance *per se*, the erection of one will not be enjoined merely because it may become a nuisance from the way in which it may be managed.

Equity will not enjoin the erection of a stable for horses on the line of a city street although a municipal ordinance provides that no stable shall be built within twenty feet of a street, in the absence of evidence that the stable will be a nuisance to adjoining owners, or will cause special and irreparable injury to their property.

Appeal from a decree of the Circuit Court for Garrett County (WILLIAMS, J.) dismissing the bill of complaint.

The cause was submitted to the Court on briefs by :

*Thomas J. Peddicord*, for the appellant.

The Town Council having classed a stable, within twenty feet of a public street, as a nuisance because of the offensive

smells which arise therefrom, any citizen who travels along such a street, or whose property is near such stable, is entitled to the aid of a Court of equity to prevent the erection of a stable in violation of said ordinace. The Legislature has power and authority to confer on an incorporated town, the power to declare what shall be nuisances, and to provide for their abatement. *Roberts* v. *Ogle*, 30 Ill. 459. A municipal corporation has authority to punish nuisances by fine, and may prescribe by ordinance, what is to be deemed a nuisance. *Chambers* v. *Ohio Life Insurance & Trust Co.*, 1 Disney, 327; *Vandyke* v. *Cincinnati*, 1 Disney, 532; *State* v. *Jersey City*, 5 Dutch, 170. Under a power to make by-laws relative to nuisances, a by-law prohibiting the keeping of a ball alley for gain is valid. *Tanner* v. *Trustees of Albion*, 5 Hill, 121; *Jackson* v. *People*, 9 Mich. 111; *Smith* v. *City of Madison*, 7 Ind. 86.

The regulation, prohibiting the erection of stables, hog pens, &c., within twenty feet of a public street, was necessary for the protection of the health of the community, and was within the terms of the charter, and was a legitimate exercise of the police power. The regulation was reasonable in every particular. *Singer* v. *State*, 72 Md. 464; *Long* v. *State*, 74 Md. 565.

The Act of 1892, ch. 343, is silent as to stables for horses, and for that reason the defendant contends that the Town Council had no power to pass the ordinance, above quoted in reference to stables, and that said ordinance is void. The plaintiff, however, maintains that under the good government clause in the charter, and under the power to secure to the residents of said town all the rights of person, and property to which they are by law entitled, the Town Council had full power to pass said ordinance. The Act of 1892, ch. 343, was amended by the Act of 1896, ch. 123, and by sec. 188, declared that the Town Council had power to legislate against stables, as well as hog pens, and further declared by sec. 1951, that the ordinance in question should remain in full force, until regularly repealed. If, therefore, there was any lack of power in the Town Council under the Act of 1892, or any defect in the

ordinance, the power was furnished by the Act of 1896, and the ordinance was made effective by section 1951 of that Act.

The Town Council may by a single ordinance declare a compilation of ordinances to be in force. *Garrett* v. *Janes*, 65 Md. 260. Therefore the Legislature had the power to declare such a compilation of ordinances to be in force. But this question has been specifically determined by this Court, in which it said a void ordinance may be ratified by the Legislature. *State* v. *Kirkley*, 29 Md. 85; *Mayor, &c., of Baltimore* v. *Reitz*, 50 Md. 574.

The plaintiff is without remedy, except by injunction. The ordinance imposes a penalty for building a stable within twenty feet of the street, but a fine not to exceed twenty dollars will not prevent the erection of the stable. Besides this, the town authorities have utterly failed to enforce the ordinance in this instance, and the plaintiff and other citizens have no protection whatever, except through this Court.

*Edward H. Sincell* and *Norman S. Hcindel*, for the appellee.
Equity will not enjoin where the apprehended injury is merely contingent. *Cleveland* v. *Citizens, &c., Co.*, 20 N. J. Eq. 201; *Wood on Nuisance*, sec. 789. Here the injury complained of is merely contingent. The erection of a stable could not be a nuisance, and this being so, the question whether it will become one depends not on its erection, but on the manner in which it is kept and used. Equity will not in advance enjoin the erection and use of a building, when the use of it may not prove essentially injurious to others. *Shiras* v. *Olinger*, 50 Ia. 571.

Whether a stable may or may not become a nuisance depends on circumstances, and equity will not enjoin when this is the case and the threatened danger is doubtful or contingent merely. *Dis. Atty.* v. *Lynn Ry. Co.*, 16 Gray, 243; *Duncan* v. *Hayes*, 22 N. J. Eq. 35.

A Court of equity has no jurisdiction to restrain the erection of a building within the limits of a municipal corporation, although such an erection is prohibited by ordinance. *Village*

of *St. Johns* v. *McFarlan*, 33 Mich. 72; 20 Am. Rep. 671; *Waupon* v. *Moore*, 34 Wis. 450; 17 Am. Rep. 446; *Schuster* v. *Board of Health*, 49 Barb. 450; *Mayor, &c., of Hudson* v. *Thorne*, 7 Paige, 261; *Phillips* v. *Allen*, 41 Pa. St. 481; *High, on Injunctions*, sec. 788.

There is no valid and legal ordinance of the Mayor and Town Council of Oakland to prohibit the erection of this stable. The Act of 1886, ch. 290, gave to the Mayor and Town Council of Oakland express authority to regulate the location of hog pens within certain limits of the town, and the bill in this case is predicated upon an ordinance passed in pursuance, or in attempted pursuance, of said Act, which ordinance also undertakes to regulate the location of stables, as well as hog pens The action of the Mayor and Town Council in undertaking to pass this ordinance was without authority of law and the ordinance passed was a mere nullity, in so far as it was designed to affect the location of stables. But this ordinance was repealed on the 7th day of May, 1892, by an ordinance passed on that day, in pursance of the provisions of the Act of 1892, ch. 343, which gave to Oakland a new charter. That charter also provided for the regulation of the location of hog pens within the town limits, but was silent as to any regulation of the location of stables and other buildings. Clearly it was not the intention of the Legislature to confer upon the municipality, under the Act of 1892, the authority to regulate the location of stables within the town. This authority could only be exercised from power derived from the Legislature of the State by express grant, or by fair and reasonable intendment. *State* v. *Mott*, 61 Md. 297.

By the Acts of 1896, ch. 123, Oakland obtained another new charter, and for the first time in the history of the many and varied organic laws of the town, authority was conferred upon the Mayor and Town Council to pass ordinances regulating the location of stables in said town, but, since this authority has been conferred, no ordinance has been passed regulating the location of such buildings, and the only ordinance or by-law on the subject is that which was passed on the 7th

day of May, 1892, when, as we respectfully submit, the
Mayor and Town Council had no authority of law to make
such a regulation.   It cannot be successfully contended that
the saving clause in the Act of 1896, which provided that "all
ordinances, now in force and operation in said town, shall re-
main and be in full force and effect until regularly repealed,"
could have any effect to keep in *esse* an ordinance which had
been originally passed without legal authority so to do.   The
agreed statement of facts stipulates that no ordinance other
than that of May 7th, 1892, has ever been passed since that
time, and such being the case, the saving clause in the Act
of 1896 could not keep in force an ordinance that never
existed.

BOYD, J., delivered the opinion of the Court.

The appellant filed a bill in equity against the appellee
praying that an injunction be issued restraining him from
building a stable on the line of Centre street, in the town of
Oakland, or within twenty feet thereof.   The bill alleges that
under and by virtue of its charter that municipal corporation
had enacted certain ordinances to prevent nuisances in the
town, and that among those so enacted and now in force is
section 14, chapter 10, title " Nuisances," which prohibits the
erection of " any privy, hog pen or stable, or other enclosures
designed for the keeping, confinement or stabling of any
horses, cattle, swine, sheep, goats or other animal or animals
producing offensive smells within twenty feet of any street of
said town, under a penalty " therein named ; that the appel-
lant owned a dwelling house which is located on a lot fronting
on Centre street, which is one of the public streets of the
town, in which she and her family live.   It is further alleged
that the appellee owns a lot on the opposite side of Centre
street, directly in front of the plaintiff's house, upon which he
" has commenced and is now erecting a stable designed for
the keeping and confinement or stabling of horses and cattle
or other animals which produce offensive smells," and that
the said stable is being built on Centre street instead of twenty

feet therefrom as required by said ordinance. It also charges
" That the building of said stable on the line of said street is
a violation of law, and if it should be completed will be a
nuisance, and the offensive smells arising therefrom will render
the plaintiff's house almost uninhabitable, and will cause irre-
parable injury to the plaintiff's said house and home." It
states that the plaintiff makes the complaint as a citizen and
taxpayer, as well as in her individual right as a property
owner. A preliminary injunction was granted. The defendant
filed an answer to the bill, in which he denied that the ordi-
nance was validly passed, alleging that the Mayor and Town
Council of Oakland did not have the authority to pass an
ordinance in 1892, when this was enacted, regulating the loca-
tion of stables within the limits of the town, and that their
action in the premises was absolutely null and void. He ad-
mits that he has commenced the erection of a stable on his
lot, in which he proposes to keep a horse, but denies that he
is doing so in violation of law, or that the horse to be kept in
said stable will produce offensive smells. The answer also
denies that the stable when completed will become a nuisance,
or that the odors will render plaintiff's house almost uninhab-
itable or cause irreparable injury to her house and home. It
alleges that he obtained permission from the Mayor and Town
Council of Oakland to build the stable and he filed a written
permit. The case was submitted to the Court below " for
final decision and determination " upon an agreed statement
of facts, and, after hearing, a decree was passed dissolving the
injunction and dismissing the bill. From that decree this ap-
peal was taken.                    .

It was agreed that the town had enacted certain ordinances,
and among others section 14 of chapter 15 (referred to in the
bill as chapter 10), which were codified in 1892. It was ad-
mitted that the ordinance and penalty have not been amended
or repealed, but remain as they were enacted and codified.
Centre street is fifty feet wide. Mrs. King's house is eighteen
feet and five inches from the street, and the stable was being
built on the building line of Centre street on Mr. Hamill's lot,

sixty-eight feet and five inches from Mrs. King's residence, and closer to Mr. Hamill's own dwelling. Among other things the agreed statement says " That the said Hamill was building said stable at the time he was enjoined in this case—that it was his purpose to keep but one horse in said stable when completed, and that no offensive smells would arise from said stable except such as naturally arise from a horse stable in which a horse is kept, and that said stable would only be a nuisance, if at all, in so far as it is declared to be a nuisance by said ordinances of the town, providing the Court finds said ordinance to be a valid and legal ordinance."

It is not necessary to cite authorities outside of this State to show that a stable is not *per se* a nuisance. In *Met. Savings Bank* v. *Mamon*, 87 Md. 68, this Court so declared in reference to a livery stable. On page 81 it was said, "The authorities which hold that a livery stable in a city is not *per se* a nuisance are so numerous that it would serve no useful purpose to repeat them. It may, however, be taken as a concession that such is the well-established rule of law about which no controversy can be reasonably expected to arise. And whilst this is unquestionably true it is equally clear that a stable, whether used for livery purposes or for private convenience, may sometimes become a very great nuisance and source of discomfort, (against which) the Courts would not fail to grant relief. But the fact just noted, that a livery stable is not necessarily *prima facie* a nuisance, suggests caution in dealing with the rights of the owners or occupants of livery stable property." If a livery stable in a city like Baltimore is not a nuisance *per se*, surely a private stable in Oakland in which one horse is to be kept, cannot be said to be. The agreed statement says *"that said stable would only be a nuisance, if at all, in so far as it is declared to be a nuisance by said ordinances of the town."* It would be giving this ordinance a meaning much broader than the language used in it would seem to justify, to say that it was intended to declare a stable built within twenty feet of a street a nuisance, merely because in the code of ordinances it is one of over forty sections

under chapter 15, which is headed "Nuisances." To say that a stable within twenty feet of a street is a nuisance, while one twenty feet and one inch from the same street is not, would be going very far, and if a town council intends to make such distinction it ought to do so in a more certain way than by codifying such an ordinance under the general head of "Nuisances."

But if it be conceded that it was intended to declare a stable situated as this is, a nuisance, and that the Mayor and Town Council of Oakland had power to pass the ordinances, or it was subsequently ratified by the Legislature, would a Court of equity be justified in restraining the erection of it under the evidence in this record? In *St. Johns* v. *McFarlan*, 33 Mich. 72, the Court said, "The erection of a wooden building within the limits of a city or village is not in and of itself a nuisance. Neither does the fact that the erection of such is prohibited by ordinance make it a nuisance. If this were so, then the doing of any act prohibited by law would upon the same reasoning be a nuisance." In *Waupon* v. *Moore*, 34 Wis. 450, that Court thus announces the doctrine: "The defendant was not about to erect a nuisance. If it is unlawful for him to erect the building in question, it is made so by the ordinance alone. Without the ordinance, no one can successfully dispute his right to do so. The question is, therefore, will a Court of equity enjoin an act, which would otherwise be lawful but which is made unlawful by a village ordinance or by-law. We find the principle stated in several very respectable authorities, that equity will not lend its aid to enforce by injunction the by-laws or ordinances of a municipal corporation restraining an act, unless the act is shown to be a nuisance *per se.*" See also *High on Injunctions*, sec. 788; *Mayor, &c., of Hudson* v. *Thorne*, 7 Paige Chy. 261; *Mayor, &c., of Manchester* v. *Smyth*, 64 N. H. 380. Certainly an individual cannot complain of the erection of a building contrary to an ordinance of a town unless he shows that the erection will work *special and irreparable injury* to him and his property, and the appellant has not shown that this stable will work irreparable injury to

her and her property. It may be that it would be more agree-
able to her not to have a stable opposite to her house, or very
near to it, but we cannot assume, and the record utterly fails
to show, that the one being erected by the appellee will so in-
jure the appellant as to justify the Court in granting an injunc-
tion to prevent anticipated damage. If every stable within
sixty-eight feet of a residence works irreparable injury, there
must be many such sufferers in cities and towns. Residents
of cities and towns are necessarily subjected to some discom-
forts that those living in the country can avoid, and while a
stable may be so used as to make it a nuisance, and hence
cause damage to those living near it, it cannot be presumed
that one being erected will be so used, and it cannot be con-
tended that merely because the owner is violating an ordi-
nance in the erection of it (if that be conceded) any citizen can
enjoin him without regard to whether such citizen suffers any
special and irreparable injury.

An injunction will not ordinarily be granted against an antici-
pated nuisance unless the facts alleged and proven are sufficient
to show it will be a nuisance *per se.* This Court said in *Adams*
v. *Michael*, 38 Md. 129, that "The general rule is that an in-
junction will only be granted to restrain an actual existing
nuisance; but where it can be plainly seen that acts which,
when completed, will certainly constitute or result in a griev-
ous nuisance, or where a party threatens, or begins to do, or
insists upon his right to do certain acts, the Court will inter-
fere, though no nuisance may have been actually committed,
if the circumstances of the case enable the Court to form an
opinion as to the illegality of the acts complained of, *and the
irreparable injury which will ensue.*" As this record wholly fails
to show that the appellant will sustain such injury, the learned
Judge who sat below was right in dissolving the injunction
and dismissing the bill.

We do not deem it necessary to determine whether this or-
dinance is a valid one, either under the powers granted the
Mayor and Council in the charter in force when it was passed,
or by virtue of the Act of 1896, ch. 123, which provided in

section 1951 that "All ordinances now in force and operation in said town shall remain and be in full force and effect until regularly repealed." Of course there can be no doubt, under the decisions of this Court, that the Legislature can validate an ordinance which was passed when the municipal corporation had no such authority, but whether by a general provision such as this, an invalid ordinance can be made valid is another question—especially when it only undertook to provide for "*ordinances now in force and operation.*" In 21 *Ency. of Law*, (2nd ed.) 995, the subject of legislative ratification of invalid ordinances is considered, and it is there said, after fully recognizing the right of the Legislature to ratify invalid ordinances, that "certainly a general provision continuing in force ordinances that were in force at the time of its passage, or theretofore made, cannot operate as a ratification or validation of a void ordinance previously passed." If it were necessary for us to decide the question, we would have no hesitation in adopting that as the general rule, but as it is not necessary for the decision of this cause to determine whether the ordinance is valid we will not do so, as it would require us to discuss at length the powers that the corporation did have. We will affirm the decree, because the appellant has not shown she is entitled to relief under this bill, even if the ordinance be conceded to be valid.

*Decree affirmed, appellant to pay the costs.*

(Decided April 2nd, 1903.)