# THE MAYOR AND COUNCILMEN OF FROSTBURG *vs.* W. E. G. HITCHINS ET AL.

*Removal of Elevated Structure Across a Private Alley by a Municipality after Declaring it by Resolution to be a Nuisance—Trespass q. c. f.—Instructions to the Jury—Evidence—Measure of Damages.*

An alley, which was entirely within the boundaries of plaintiff's lot of ground in a city, had been used by the public for a number of years, but the municipality had never acquired title to the alley nor accepted its dedication to public use. Plaintiff's predecessor in title erected a frame structure over the alley, about ten feet above ground, which contained rooms and connected houses on either side of the alley occupied by him. This elevated structure had been used by the plaintiff and others for some years when the municipality passed a resolution declaring the same to be a nuisance and directing plaintiff to remove it. This order was not complied with and the municipality itself tore down the structure and removed the materials. In an action *q. c. f.*, *held*, that the public had a mere right of way over the alley, which is plaintiff's private property, and the municipality was not authorized to remove the elevated structure over the alley after merely declaring it to be a nuisance, but the fact that it was a nuisance should have been first established before a Court of competent jurisdiction.

*Held*, further, upon the evidence, that the slight degree of obstruction to light and travel caused by the elevated structure did not amount to a nuisance as matter of law.

In the above action, the trial Court instructed the jury that they could not render a verdict for the defendant unless they found that the obstruction to light and travel on the alley by the said structure was so material as to amount to a public nuisance. *Held*, that the defendant is not entitled to object to this instruction.

In an action of trespass *quare clausum fregit* the defendant is not entitled to offer evidence to show that the trespass may have resulted in some benefit to the plaintiff, as, for instance, by improving the appearance of his remaining property.

In an action for unlawfully tearing down and removing a structure belonging to the plaintiff, he is entitled to recover compensation for the destruction of the building and for the damage done to other portions of the buildings not torn down, and, if the jury find that the defendant acted in a wanton and reckless manner, then they may award such further sum as exemplary damages, as the circumstances may in their judgment warrant.

After municipal officials had notified a party that he must remove a certain building, alleged to be a nuisance, a verbal agreement was made between the city's attorney and counsel for the property owner to the effect that nothing further should be done in the matter until after the decision of a pending cause between other parties involving similar principles. *Held*, that in an action against the city for unlawfully tearing down the building in question, evidence of the agreement and of its breach by the defendant is admissible to aid in the ascertainment of the damages.

Appeal from the Circuit Court for Allegany County (HENDERSON, J.)

*Plaintiff's 2nd Prayer.*—If the jury find for the plaintiffs under their first prayer, then in estimating damages they may allow to the plaintiffs such amount as they find from the evidence will compensate them for the destruction of such portion of their buildings as the jury may find was destroyed by the defendant, and such further sum as will compensate the plaintiffs for the damage (if any) done by the defendant to the other portions of said buildings not torn down and carried away. (*Granted.*)

*Plaintiff's 3rd Prayer.*—If the jury find for the plaintiffs under their first prayer and further find that the defendant, in the removal and the destruction of the said superstructure and the injury to the remainder of the plaintiff's buildings not so destroyed, acted in a wanton and reckless manner, then the jury are not limited to the actual amount of damage done (if they find any has been done), but may award such further amount as exemplary damages as the facts and circumstances accompanying such injury to said property may in their judgment warrant. (*Granted.*)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, PEARCE and SCHMUCKER, JJ.

*Chas. G. Watson*, for the appellant.

*Benj. A. Richmond* and *Albert A. Doub* (with whom was *D. James Blackiston* on the brief),for the appellees.

The good faith of the appellant in tearing down this struc-

ture, and the question whether in so doing it had broken faith in the reckless, wanton and hasty manner in which it had done so, at an unseemly hour of the night, were all matters of evidence which properly went to the jury on the question of the right of appellees to recover exemplary damages for the wrong done, and this agreement, between Mr. Watson, as attorney for the appellant, and Mr. Doub, as attorney for the appellees, was certainly a strong item in the chain of evidence relied upon by the appellees to show this want of good faith and wanton haste on the part of the appellant. On the question of the character of the conduct of the appellant in making this trespass, this agreement of counsel was of the most pertinent and cogent character, because if anything could show want of good faith in the city, and a desire to act in undue haste and in a clandestine manner, the violation of this agreement certainly tended to show the same, and was a necessary part of the transaction, proper to go to the jury, to enable them to judge of the character of the conduct of the appellant. A plaintiff may give in evidence the circumstances which accompanied and gave character to the wrong, and the jury may consider those circumstances for the purpose of increasing the damages. *Schindel* v. *Schindel*, 12 Md. 133; *Snively* v. *Fahnestock*, 18 Md. 395; *Young* v. *Mertens*, 27 Md. 114.

The 2nd, 6th and 9th exceptions raise the simple question as to whether the appellant could mitigate the damages by showing that the destruction of the superstructure improved the appearance and added to the value of the remaining property of appellees. A bare statement of this proposition is sufficient to show that the Court was clearly right in excluding this testimony. It is elementary that a trespasser cannot relieve himself from the damages consequent upon his destruction of his neighbor's property on any fancied notion that the destruction of the property will improve the neighbor's remaining property.

The first prayer of the appellees sets out their whole case and all the defenses of the appellant, and concludes that under all the facts on both sides, the plaintiff is entitled to recover,

unless "the jury shall further find that said structure, as so built and maintained by the said Payne and the appellees after him, was at the time it was torn down such a material obstruction to public travel on said street in the way in which said alley had been accustomed to be used by said public, as to constitute it a nuisance." The theory of this prayer, as well as of the appellant's three prayers as modified and granted by the Court, is that the action of the appellant in tearing down said structure in the manner disclosed by the evidence, furnished a good cause of action to the appellees, unless the jury, under the facts of the case, were of opinion that the superstructure amounted to a public nuisance. It will be seen, therefore, that not only in the appellees' first prayer, but in all the appellant's prayers, the question whether or not this structure constituted a nuisance is left to the jury, and that the burden was thrown upon the appellees to satisfy the jury that the structure was not a nuisance or a material obstruction to public travel in the alley.

This theory of the law, as adopted by the learned Court below, went much further in favor of the appellant than the Court was justified in doing under the authorities in this State, and certainly furnished the appellant with no possible ground of exception. *New Windsor* v. *Stocksdale*, 95 Md. 215.

Under this authority, it was the duty of the municipality if it wished to defend its action in tearing down the structure, to show, in the first place, not merely that the public used the alley, but that the municipality had a right to the use of the alley and to remove obstructions therefrom. As nothing of the kind was shown or appears in the record, the appellant had no right to arbitrarily declare the structure a nuisance, even if it were in fact a nuisance, and under the facts in this case, under the authority of Stocksdale's case, the fact that the structure was a nuisance would not have relieved the appellant from its liability, but, as we have said, by the appellees' first prayer, and the appellant's prayers as granted, the appellant was treated as having the right to use this alley as a municipality, and as having the right to remove obstructions

therefrom, and as having a right to tear the structure down, if it *in fact* was a nuisance. This assumption in favor of the appellant by the Court, (contrary to the principle laid down in Stocksdale's case,) that a municipality had a right to tear down a structure if it in fact was a nuisance, threw upon us the burden of satisfying the jury that it was not a nuisance, and enabled the appellant to make a defense before the jury on the question *vel non* of the nuisance of the structure, which, under Stocksdale's case, we were not bound to meet. The Court, however, gave the appellant this advantage, and in the light of the above authority, on what principle the appellant can now complain of the action of the Court in giving it the benefit of a theory which went beyond the ruling in Stocksdale's case, we cannot understand. The ruling of the Court certainly placed a burden upon us which we should not have been required to bear, but in doing so, if there was error, it certainly was not error of which the appellant can complain, but would be error of which we could complain.

This liberality of the Court to the appellant in this case, whereby we were required to prove as a preliminary to our recovery that the structure was not a nuisance, is based upon some expressions of this Court in the recent case of *Wineland* v. *Mayor, &c., of Frostburg*, 98 Md., where this Court says: "We come to the remaining question, and that is, does the proof in the record show that the trees here in dispute amount to such an obstruction to the travelling public as to constitute a nuisance?" And then decides that a municipality has not the arbitrary right to determine whether a tree or a structure is a nuisance *per se*, but that the right of a municipality to destroy a tree or a structure, in equity, must depend upon the fact whether the tree or structure is a nuisance. This is undoubtedly sound law where the acts of a municipality are sought to be restrained by a Court of equity, but in the case at bar, like Stocksdale's case above, before the defendant is entitled to rely upon the defense of the fact of nuisance, it must, as said in Stocksdale's case, show something more than the right of the public to use the alley; it must show some right

in itself to use the alley and remove the obstructions or else it is a trespasser. Therefore, the appellees' prayer and the appellant's three prayers as granted, laid down the law much more favorably to the appellant than it was entitled to, and furnishes no ground of exception, certainly not to the appellant.

As to the modifications of appellant's prayers by the Court, in the first prayer, appellant undertook to say that the obstruction in the alley to travel and to light was a public nuisance. The Court added the word "material" to the word obstruction, and struck out the item of light, and left the question as to whether the whole structure, as it stood, under all the evidence, "was such a material obstruction to public travel as to amount to a nuisance." Without this alteration the prayer was unquestionably bad, because it undertook to say that any kind of an obstruction, whether material or not, coupled with the single question of light, amounted to a nuisance, which the Court of course could not say. It was its duty to leave the whole case to the jury, for them to say, whether under the whole facts, the structure was such a material obstruction to public travel as to amount to a nuisance. The prayer, therefore, could not have been granted as originally drawn. The modification of appellant's third prayer corrects it in the same particulars as in the first and second. The prayer as drawn and submitted to the Court could not have been granted under any principle of law, and could only be saved from being radically bad by the modification the Court has added, which, as we have argued above, gave appellant much more law than it was entitled to.

The appellees' second prayer states a plain principle of law, applicable to all actions of this nature, and, if the jury found for the plaintiff, allowed them to give damages for the buildings destroyed and such further damages as would compensate the plaintiff for the damage done to the other buildings of appellees which were not carried away.

There was abundant evidence to support each and every fact recited in appellees' third prayer. There was evidence to

show that the appellant in tearing down said building, acted in a wanton and reckless manner, in flagrant violation of its solemn agreement with appellees' attorney, in a wholly unnecessary and hasty manner, in hurried advance of a decision of a Court of equity in which the rights of the appellees and the appellant it was supposed would be determined, and which were a few days later determined in favor of the appellees. Appellant sent its servants, practically in the night time, at between four and five o'clock in the morning, on to a peacaeble street, where the people were asleep in their beds, and roused them from their slumbers by a sudden, reckless, and hasty attack upon this structure. The books and furniture of the Y. M. C. A., appellees' tenant were rudely tumbled into the corridors and gable ends of the adjoining and exposed building, or else carried out into the street and left exposed to the weather. The structure was rudely torn from its fastenings, injuring the other buildings, and suddenly and hastily thrown to the ground, crushing, wrecking and breaking the same, and rendering the materials of which it was composed of little or no value to the appellees, and this was done in this clandestine, hasty, night time and wanton manner, in violation of agreements and without any necessity, in hurried anticipation of an adverse decision by a Court which then had the case under consideration, without any notice whatever to the appellees or to the Y. M. C. A. of the immediate assault intended to be made, and in the face of the prayers and petition of fourteen members of the Y. M. C. A. asking the city not to take hasty action. If, under all these facts and circumstances, the jury were not warranted in finding that the appellant acted in a wanton and reckless manner, it is hard to understand what conduct of a trespasses would justify its characterization as wanton and reckless. In cases of this kind, where the conduct of the defendant is aggravated and reckless, it is the settled law of this State that the jury "may award such further amount as exemplary damages as the facts and circumstances accompanying such injury to said party may in their judgment warrant." *Moore* v. *Schultz*, 31 Md.

423; *Barton Coal Co.* v. *Coa*, 39 Md. 30; *Ridgely* v. *Bond*, 17 Md. 15; *Young* v. *Mertens*, 27 Md. 128; *Schindel* v. *Schindel*, 12 Md. 122; *Gusdorf* v. *Duncan*, 94 Md. 168.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for Allegany County in favor of the appellees as plaintiffs in an action of trespass *quare clausum fregit.* The trespass forming the basis of the suit was the forcible removal by the appellant of an elevated structure erected across an alley way located on a lot of ground owned by the appellees on Main street in the town of Frostburg.

The alley, which lies entirely within the boundaries of the appellees' lot, was called for in a deed of the lot, made in the year 1852, to J. S. Welsh under whom the appellees claim title, and it has been freely used by the public as an alley ever since that time. It does not appear from the record that the appellant ever acquired title to the alley or the land under it or ever accepted its dedication to public use either by formal corporate action or by the transactions of any authorized public department or official.

About eighteen years prior to the institution of this suit Peter Payne, who at that time owned the lot and had his dwelling-house on one side of the alley and kept a hotel on the other side of it, erected the frame structure now in question over the alley for a distance of thirty-six feet at an elevation of ten or eleven feet above the surface of the land. This structure contained three rooms and extended entirely across the alley, which was sixteen feet wide. It communicated with the second story of both the residence and the hotel although it was not built into either of them but rested upon wooden posts six inches square set up along the two sides of the alley against the hotel and the dwelling. At the institution of this suit and for sometime prior thereto the three rooms over the alley along with other rooms adjacent thereto were rented to the Young Mens' Christian Association and used for its headquarters.

The elevated structure so erected above the alley was used and enjoyed by the successive owners of the lot without objection on the part of any one until July the 19th, 1895. On that date, the appellees being about to close the alley entirely by erecting a building on its surface underneath the elevated structure, the appellant jointly with certain individuals owning lands in proximity to the alley filed a bill in equity in the Circuit Court of Allegany County praying for an injunction prohibiting the appellees from erecting their contemplated building on the surface of the alley and requiring them to remove the elevated structure erected above it. The appellees answered the bill asserting that they were the exclusive owners of the bed of the alleged alley and denying that the public had a right to use it for any purpose. A final decree was passed in that case, in due course on September 18th, 1895, enjoining the appellees from closing the bed of the alley by the erection thereon of their contemplated building, but they were not required to remove the elevated structure built above the alley nor was any mention of or allusion to that structure made in the decree.

On April 20th, 1903, the appellant by a formal resolution declared the elevated structure to be a nuisance and gave written notice to the appellees to remove it within sixty days or the municipality would tear it down. This notice not having been complied with, the appellant on June 30th, 1903, forcibly tore down and removed the structure and in so doing injured to some extent the plaintiff's adjoining house. The appellees thereupon brought the present suit in trespass *quare clausum fregit* and recovered the judgment against the appellant from which the present appeal was taken.

There is evidence in the record tending to show that the elevated structure obstructed to some extent the light and air in the portion of the alley lying below it and that vehicles of exceptional heighth were unable to pass under it; also that persons and vehicles gathered under it in wet weather for shelter and that nuisances were sometimes committed there by ill-behaved persons. It also appears that the charter of

Frostburg confers upon the Mayor and Councilmen a general power to remove nuisances and obstructions from the streets, lanes and alleys of the town.

The record contains eleven bills of exception of which ten relate to rulings upon questions of evidence and the eleventh is to Court's action upon the prayers offered by the respective parties to the suit. We will consider the last exception first, as it is vital to the issue presented by the record.

The plaintiff's first prayer asserted the proposition that if the jury found that the plaintiffs were the owners of the lot of ground over a part of which the elevated structure was erected and that the defendant by its agents or servants entered upon the lot and tore down the structure and injured the other improvements on the lot the plaintiffs were entitled to recover even though the jury should find that there was an alley way reserved over the portion of the lot lying under the structure and that the public had been accustomed to use the alley as a public way ever since the year 1857, unless the jury further found that the structure at the time of its removal formed such an obstruction to public travel in the manner in which said alley had been accustomed to be used as to constitute the structure a nuisance.

We find no error in this proposition of which the appellant can complain. In the case of *New Windsor* v. *Stocksdale*, 95 Md. 196, both the form of action and the issue raised by the pleadings were the same as in the present case and the principles held by the very full opinion there filed to have been the controlling ones in that case are conclusive of this one. In Stocksdale's case the town of New Windsor was sued in trespass *quare clausum fregit* for entering upon an alley which the public were entitled to use over the plaintiffs' land and removing therefrom certain door steps attached to her house, which had by corporate action of the municipality been declared to constitute a nuisance. The plaintiff recovered a judgment in the case and upon the appeal of the defendant we held that as it did not appear that the alley had ever been conveyed to the town or that it had been dedicated to the public and accepted

by the municipality, the town authorities had no right to enter upon the alley and remove the steps.    We there distinguished between the right of the *public* to use the alley and the authority claimed by the municipality to enter upon the alley and remove the alleged obstruction after having first by corporate action declared it to constitute a nuisance.  In support of the views expressed in our opinion in that case we cited from the opinion of the Supreme Court of the United States in *Yates* v. *Milwaukee*, 10 Wall. 479, the statement.  "It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general laws either of the city or of the State within which a given structure can be shown to be a nuisance, can, by a mere declaration that it is one, subject it to removal by any person supposed to be aggrieved or even by the city itself.   This would place every house, every business, and all property in the city at the uncontrolled will of the temporary local authorities."    Stocksdale's case has been cited and relied upon by us as conclusive of the still more recent case of *Frostburg* v. *Wineland*, 98 Md. 239, where we upheld a decree enjoining the municipality from removing from the sidewalk of a public street certain trees which had been declared by municipal corporate action to consitute a nuisance, it not appearing from the evidence that the trees did so obstruct public travel as in our opinion to constitute a nuisance.    Municipal corporations even when clearly authorized by their charter to remove or abate nuisances and obstructions on the public streets should never undertake to forcibly destroy or remove structures like the one now in question constructed between private houses above a mere right of way over private property.    They should institute appropriate proceedings before a Court of competent jurisdiction to establish the fact, if that can be done, that the structure amounts to a nuisance or an unlawful obstruction upon a public street and to require its abatement or removal.

 . Nor do we find any error in the plaintiffs' second and third prayers which declared the measure of damages according to recognized standards. in the event of a verdict for the plaintiffs.

The question whether the elevated structure which was re-
moved constituted such a material obstruction to travel and
light on the alley as to amount to a nuisance was fairly sub-
mitted to the jury by the defendant's three prayers all of
which were granted after having been modified by the Court.

The defendant's first prayer as offered by it based its claim
to a verdict in its favor upon the finding by the jury that the
structure constituted a public nuisance by obstructing light
and travel on the alley. Its second and third prayers based
its claim to a verdict upon the finding by the jury that
the structure obstructed the light and travel on the alley.
The Court so modified these three prayers as to make them
distinctly require the jury to find that the obstruction to light
and travel on the alley by the structure was so material as to
amount to a public nuisance, before they could find for the
defendant.

The question whether a given state of facts, if found to exist
by a jury, constitute a nuisance is ordinarily one of law for the
Court or is at least a mixed question of law and fact, but we
do not think that the defendant can complain of the Court's
action on its prayers, because by its own first prayer it asked
the Court to submit to the jury whether the alleged ob-
struction constituted a public nuisance. We are further of the
opinion that the slight degree of obstruction shown by the
evidence to have been caused by the structure to light and
travel on the alley did not amount to a nuisance. We are also
upon the whole case of the opinion that the facts offered in
evidence did not at all justify the municipality in forcibly en-
tering the plaintiffs premises · and destroying the elevated
structure.

The first, third and fourth exceptions were taken to the ad-
mission of evidence tending to prove that after the appellant
sent its notice to the appellee to remove the elevated structure
a verbal agreement was made between Mr. Watson, the regu-
larly elected attorney of the town of Frostburg, and Mr. Doub,
representing the appellees, that nothing further would be done
in reference to the removal of the structure until after the de-

cision of the then pending case against Mrs. Parker which it was supposed would settle the principle involved in the present one.   The agreement, if there was one, was not observed by the town and it was proper that the evidence should go to the jury, for if they found that the agreement had been made and broken by the appellant those facts might have been considered by them along with other features of the transaction in determining the character of the appellant's conduct in committing the trespass for the purpose of assessing the damages. The agreement was not one between counsel in reference to a pending litigation which is required to be made in writing, for the suit had not then been brought, and there was evidence tending to show that Mr. Watson was a regular municipal official within the scope of whose duties the making of such an agreement for a moderate delay might reasonably be regarded as included. The evidence was properly admitted.   *Schindel* v. *Schindel,* 12 Md. 122; *Snively* v. *Fahnestock,* 18 Md. 395.

The second, sixth and ninth exceptions were to the refusal to permit the appellant to introduce evidence tending to show that the value and appearance of the appellees' adjoining property were improved by the removal of the structure over the alley.   This ruling was clearly correct as a trespasser cannot relieve himself from the damages resulting from his trespass by showing that some advantage may have accrued to the plaintiff therefrom.

The other exceptions were to rulings on matters of evidence, involving no error on the part of the Court below, which by reason of the view which we have taken of the whole case we deem it unnecessary to notice in detail.

The judgment appealed from will be affirmed.

*Judgment affirmed with costs.*