## MAYOR AND COUNCILMEN OF FROSTBURG *v.* JAMES SLEEMAN, ET AL.

[No. 26, October Term, 1945.]

394

*Decided December 17, 1945.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*D. Lindley Sloan* and *William A. Gunter* for the appellant.

*Edward J. Ryan* for the appellees.

MELVIN, J. (The following opinion, prepared by Judge Melvin, was adopted by the Court, after his death, and ordered filed as the opinion of the Court) :

The appeal in this case is from a decree of the Circuit Court for Allegany County dismissing the appellant's bill of complaint against the appellees for a mandatory injunction to compel them to restore to its former grade

the sidewalk in front of their apartment house on East Main Street Extended in the City of Frostburg.

It is conceded that the municipality, itself, has never passed any ordinance establishing a grade for this sidewalk, and that the only action ever taken to that end was by the individual property owners, including the apellees, under a private agreement entered into between them about nine years before this territory was acquired by the City by annexation in 1935. The annexation ordinance has not been included in the record in the instant case, so that whether or not it contains any reference to the subject of grades of streets, curbs or sidewalks is not disclosed on this appeal. The appellant's contention is that at the moment of annexation the grades then existing in the annexed territory became automatically established as the official city grades, without necessity for the passage of any ordinance to accomplish this result, and can only be changed by municipal action.

As the appellant's whole case is based on the correctness, *vel non*, of this assumption of law, it will not be necessary to discuss the other aspects of this appeal, further than to make reference to the affirmative action which the appellants took in 1938 in establishing a curb for this and other streets in Frostburg in connection with the Works Progress Administration, and to the allegation in the bill of complaint that the appellees' re-laid sidewalk constitutes a nuisance.

It is relevant to note at the outset just what power and authority this municipality has over its curbs and sidewalks, as delegated to it in these words of the applicable statute (Section 216 of Article 1, Public Local Laws of Allegany County) :

"The Mayor and Councilmen of Frostburg shall have power and authority to grade and pave all sidewalks and gutters which in their judgment the public convenience may require, and to cause said sidewalks and gutters to be regraded, repaved, repaired or otherwise improved, and to cause said sidewalks and streets to be curbed and recurbed, and to collect the cost thereof from

the person or persons owning the property fronting on any of said sidewalks, curbs or gutters, and whenever the person or persons owning the property fronting on any such sidewalks, curbs and gutters shall fail or refuse to have such sidewalks, curbs or gutters paved, graded, curbed, repaved, regraded, recurbed, when and as directed to do so by any ordinance of said city, within thirty days from the date of its passage, or shall fail or refuse to repair the same after thirty days' written notice given by the Street Superintendent, the said Mayor and Councilmen shall have the materials found and the work done, and shall cause the Street Commissioner to ascertain the amount chargeable to each proprietor or owner," etc.

Under the authority of this statute the appellant in 1938 directed its City Engineer to establish the grade of a curb to be constructed between the street and the sidewalk now in question and, according to the testimony of that official, the "Mayor and Council called the abutting owners into the council chamber and asked them just what kind of a curb they would require." A majority of them chose a stone curb, and in due course the curb was laid, the work being done by the Works Progress Administration and the City paying for the materials. The whole project was under the authorization of the municipal government and the procedure followed was the same as in all other cases for establishing curbs and grades throughout the City.

Although at the conclusion of the job the City Engineer made the usual official report to the Mayor and Councilmen, as well as to the Street Commissioner, and though the placing of the curb was equivalent to establishing the grade of the sidewalk—according to the Engineer's answer to a direct question by the Chancellor on this point—no action was taken by the City to require the abutting owners to conform to this grade. As a result, pools of water formed in the space between the curb and the sidewalk because of the latter's lower level, and created the condition about which the appellees con-

sulted the City Engineer in 1940. It was then that he told them, according to the uncontradicted testimony, that the only way they could correct that condition would be to raise their sidewalk up to the curb. This the appellees proceeded to do in June, 1943, after first having applied to the City Clerk for a permit. In connection with this point appears the only dispute as to any of the facts in the case. One of the appellees, Wesley Sleeman, testified that he asked the City Clerk for a permit "to remove our pavement. He says I didn't need anything, I came on down and we started to work." The City Clerk's version, corroborated by the City Treasurer who happened to be in his office at the time, is that Mr. Sleeman asked "if it was necessary to get a permit to repair the pavement in front of their place. I said, no, it wasn't necessary to get a permit to repair it. That was all that was said."

Regardless of which of these versions be correct, the fact remains that the appellees did proceed, without anything more in the way of a permit, to re-lay their sidewalk and to make it conform to the grade of the curb. This, it is conceded, they have done. To accomplish the result they raised their sidewalk 11 inches above the original grade, to which the other abutting owners have still adhered, and connected to the adjoining sidewalk by a concrete slope or ramp about 8 inches wide and 9.4 feet long, with an angle of $3\frac{1}{2}°$. It is not disputed that "constructing a ramp is good engineering practice," as testified to by the City Engineer of Cumberland, a witness for appellees, or that the construction of the sidewalk and ramp was in a good and workmanlike manner.

There is a complete lack of evidence to support the allegation of the bill that this sidewalk, as re-laid, is a "dangerous obstruction" or that it constitutes a nuisance. It is well settled that a mere declaration by a municipal corporation that a designated structure is an obstruction cannot make it so, or make it a nuisance unless it, in fact, has that character. "It is a doctrine not to be tolerated in this country that a municipal corporation,

without any general laws either of the city or of the State, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any persons supposed to be aggrieved, or even by the city itself. This would place every house, every business and all the property of the city, at the uncontrolled will of the temporary local authorities." *Frostburg v. Wineland,* 98 Md. 239, 244, 56 A. 811.

It has also been held by this Court that equity will not lend its aid to enforce by injunction the ordinance of a municipal corporation restraining an act, unless the act is shown to be a nuisance *per se. Frostburg v. Wineland, supra; King v. Hammil,* 97 Md. 103, 54 A. 625.

In the instant case there is not even an ordinance to be enforced or upon which to predicate any violation of duty by the appellees. This very omission points to the inherent fallibility of the appellant's case, for it was incumbent upon the municipality when it annexed this property in 1935 to establish grades for the streets and sidewalks in that territory. It had the express power and authority under its charter to do so and no property owner would have had the right or authority to make any change in such grade. *Alberger v. Mayor, etc., of Baltimore,* 64 Md. 1, 7, 20 A. 988; *McQuillin Mun. Corp.,* 2d Ed., Sec. 1990.

As hereinbefore indicated, plaintiff's argument on this appeal is predicated on the assumption of law that when the city annexed this territory in 1935, it accepted the grades as previously fixed, and that, without taking any municipal action whatever in the way of an ordinance or otherwise, this original grade became automatically established as the official city grade. However, not a single relevant authority has been cited to support this assumption and we take it that none can be found, for it is elementary that upon the annexation of territory to a municipality, in the absence of special provision to the contrary it becomes subject to the control of the

municipal authorities precisely as territory already within the original limits. 25 Am. Jur. 269.

In this connection the appellant takes the anomalous position that while the establishing or changing of sidewalk grades by a municipality is not a mere ministerial act but a legislative one, to be accomplished only by the passage of an ordinance, yet, when it comes to the subject of grades, for newly annexed territory, no ordinance at all is necessary but that, as a substitute, the city may adopt grades previously established by a private agreement between individual property owners.

The only reference given by appellant to an authority on the point of previously established grades is to 43 C. J., Sec. 120, the quotation in the brief being: "Property annexed to a municipality is subject to use for streets and alleys. * * * On the other hand, the municipality takes such public ways in trust for the public, *subject to established grades* and rights reserved by a dedicator." (Italics supplied by appellant.) But one case is cited by *Corpus Juris* in support of the text and that is *City of Dayton v. Haines,* 12 Ohio App. 439. An examination of that case, however, at once eliminates it as an authority in appellant's behalf. It was an action in which a property owner sought to recover damages on account of a change of grade in the street in front of her premises. The evidence tended to show that she planted some trees according to a grade established before annexation and that these were injured by a change in that grade by the City of Dayton. There was no question involved as to how the former grade had been established or to what extent, if at all, it was incumbent upon the municipality, under its charter powers, to pass a grade ordinance at or after annexation.

In the case at bar there is nothing to show that the annexation ordinance made any reference to the subject of sidewalk grades and, in the absence of such a provision, the City had no legal right to assume that any sidewalk grades were in existence so as to obviate the exercise by the municipality of its charter powers to

pass and enforce ordinances for that purpose. The appellant emphasizes the argument that the grade for this sidewalk in question was in existence at the moment of annexation, that it was binding on the appellees and all the other property owners, and that the appellant, exclusively, had the power and authority to change it. However, this argument is unsound for two reasons: First, as above stated, this grade did not automatically become established as the official city grade in the absence of affirmative municipal action to that end; and, second, the original agreement which fixed this grade some nine years before annexation was between private property owners as individuals, and the municipality of Frostburg had nothing whatever to do with it. If the appellees here, in raising their sidewalk above the grade originaly established, have violated this agreement, that would be a matter exclusively between the parties to it, and would have no place in the pending proceedings.

Even though the appellant has never passed an ordinance establishing a grade for this sidewalk, and therefore cannot claim that the admitted change made by the appellees was in violation of any such action, it is clear from the record in the instant case that the appellees in re-laying their sidewalk in June, 1943, nevertheless undertook to comply with the curb grade which the City Engineer had established under the direction of the municipal authorities and in accordance with the recognized procedure in such matters.

In the absence of any showing in the record before us that the appellant has ever exercised its power to pass any ordinance on the subject of sidewalk grades for the property involved in this appeal, and also in the absence of any proof that the raised sidewalk and ramp constitute a nuisance, the Chancellors were justified in dismissing the bill of complaint.

*Decree affirmed, with costs.*