O. E. WELLER, Chairman, PHILLIPS LEE GOLDS-
BOROUGH, IRA REMSEN, WILLIAM BULLOCK
CLARK, E. E. GOSLIN and W. B. MILLER,
Constituting the State Road Commission,

*vs.*

JOHN LEO MUELLER et als.

*State Road Law: Chapter 217 of Acts of 1910; interpreted.*
*Injunctions: public wrongs; taxpayers;*
*special burdens.*

Under the State Roads Law, Chapter 217 of the Acts of 1910
(Code of 1912, Article 91, section 78), the Circuit Court of
any county where the powers conferred upon the State Roads
Commissioners * * * have been or are about to be exercised,
has jurisdiction over any cause of action for a violation, or
a contemplated violation, of the road laws.          p. 637

Individuals can not sue to restrain alleged public wrongs, un-
less they have a special interest requiring protection; but if
the unauthorized act complained of would result in an in-
creased taxation, those, upon whom this burden would fall,
constitute a special class, with an interest distinct from that
of the general public, and are entitled to seek relief by injunc-
tion.          p. 638

There is such a relation between an alleged diversion of funds
for the improvement of county roads and the general taxa-
tion as to give a Court of Equity jurisdiction to entertain an
application for an injunction by taxpayers who complain of
an alleged intended wrongful diversion of such funds.

pp. 638-639

The passage of Chapter 370 of the Acts of 1912 authorized an additional loan of three million, one hundred and seventy thousand dollars, in order to complete the construction of the State public roads, as provided by Chapter 141 of the Acts of 1908; the intention of the Legislature was that the second fund should simply serve to supplement the first in accomplishing the single purpose of establishing within a limited time a State highway system selected and defined, with a general view to an apportionment of its benefits among all the counties on the basis of public road mileage.  pp. 640-641

Under that Act, the apportionment out of the supplemental loan, for use in Baltimore County, is lawfully applicable in part to the reimbursement of the commission for road construction theretofore done in that county in excess of its due proportion of the original fund.                    p. 643

*Decided April 30, 1913.*

Appeal from the Circuit Court for Baltimore County (N. CHARLES BURKE, C. J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Leon E. Greenbaum, for the appellants.*

*Elmer J. Cook,* (with whom was *J. Howard Fox* on the brief), for the appellees.

URNER, J., delivered the opinion of the Court.

By Ch. 141 of the Acts of 1908 (p. 242), which created the State Roads Commission and authorized a $5,000,000.00 road loan, the Commission was given the power and charged

with the duty "to select, construct, improve and maintain such a general system of improved State roads and highways as can reasonably be expected to be completed with the funds" provided by the Act "in and through all the counties of this State." There was a provision that the amount available for actual construction work should be appropriated and used in the several counties in proportion to their existing road mileage. The original loan proving insufficient the Act of 1912, Chapter 370, was passed authorizing an additional loan of $3,170,000.00 "in order to complete the construction of the State public roads as provided" in the Act of 1908. It is enacted that the proceeds of the second loan shall be used for the purposes set forth in the earlier statute, and that the Commission shall "appropriate and use in the several counties of the State of Maryland $2,000,000.00, of which three hundred thousand ($300,000) dollars shall be apportioned and used promptly in Baltimore county, one hundred and fifty thousand ($150,000) dollars of which shall be promptly expended·on the Baltimore and Yorktown Turnpike road, beginning at the City limits and extending as far north on said turnpike as said one hundred and fifty thousand ($150,000) dollars will properly build said road, and in the City of Baltimore six hundred and twenty-five thousand ($625,000) dollars, of the funds arising from the bond issue herein provided in the same proportion as provided for the expenditure of a State Roads Loan created by Chapter 141 of the Acts of 1908, it being the intention of this Act to provide for the additional sum of $2,625,000.00 to be used in the furtherance of the purposes for which the State Roads Commission was created, and in the same manner as the State Roads Loan of five million dollars ($5,000,-000) created by Chapter of said Act." The remaining $545,-000.00 of the new fund was appropriated for the purposes which need not be stated.

It is with the appropriation in the Act of 1912 of the fund for use in Baltimore county that this proceeding is concerned. The plaintiffs are residents and taxpayers of that

county and they sue not only for themselves but on behalf of all others similarly interested. The bill was filed in the Circuit Court for Baltimore county and the defendants are the State Roads Commission, one of whose members resides in that jurisdiction. It is charged in the bill that the defendants are about to divert and spend in the construction of roads in other counties approximately $100,000.00 of the amount directed by the Act of 1912 to be appropriated and used in Baltimore county, the Commission claiming that the latter county had received about $100,000.00 more than its share of the $5,000,000.00 road loan authorized by the Act of 1908. The bill states that the plaintiffs have no knowledge as to whether or not this claim of the defendants is correct, but it is averred that even if it be true that more than the amount allotted to Baltimore county out of the former loan was expended in that county by the defendants, they were acting within their powers in so doing, under the terms of the Act of 1908, and that in any event the proposed diversion from Baltimore county or approximately $100,-000.00 of the $300,000 apportionment, for any purpose whatever, is wholly illegal and will result in irreparable injury to the plaintiffs and other taxpayers of that county. The relief prayed for is that an injunction be issued restraining the Commission "from expending any portion of the $300,000.00 provided for Baltimore county in the Act of 1912 anywhere except in Baltimore county" and "from appropriating or expending any portion of said $300,000.00 for the purpose of paying for any work heretofore done by the defendants as Roads Commission in Baltimore county or elsewhere or for any other purpose than road building in Baltimore county."

The defendants questioned by demurrer the jurisdiction of the Court and the sufficiency of the bill. The jurisdictional objection was based in part upon the ground that the State Roads Commission is an agency of the State and a quasi corporation, with its principal office established in Baltimore city, and that it does not carry on any regular

business or exercise its franchises in Baltimore county where the suit was instituted. It is contended that the residence of one of the members of the Commission in Baltimore county, and the fact that the fund in controversy was appropriated for road construction there, cannot bring the case within the judical cognizance of the Circuit Court for that county. The theory of the defendants is that they can be sued as a State Commission only at the seat of the State Government, or in Baltimore City where its principal office is located. It is further objected that the plaintiffs have no such interest in the subject-matter of the litigation as entitles them to maintain the suit. Upon the question as to the sufficiency of the bill it is urged that the Act of 1912, when construed in the light of the previous legislation to which it refers, fully justifies the action of which the bill complains. These objections were not sustained by the Court below, and from its order overruling the demurrer the defendants have appealed.

By the Act of 1910, Ch. 217 (p. 314), which transferred to the State Roads Commission the powers and duties formerly reposed in the State Geological and Economic Survey, including the co-operation with the counties in road improvements undertaken by them on their own initiative or at the instance of abutting land owners, it was provided that "the Circuit Court of any county where the powers conferred upon the State Roads Commission or its predecessor have been or are about to be exercised shall have original jurisdiction of any cause of action or complaint which may be brought by the State Roads Commission, the County Commissioners for such county, or any person or corporation aggrieved, for violation or contemplated violation of any of the provisions of this sub-title or contract thereunder with respect to any road or roads within such county; and process against said State Roads Commission may be served upon any member or officer of said Commission.' This provision is now a part of section 78 of Article 91 of the Annotated Code of 1912, but was originally enacted as an amend-

ment to section 45 of the same Article of the Code of 1904. While this section deals particularly with a different class of road improvements from those to which the fund here in dispute is applicable, it nevertheless refers in terms to suits for the violation of *any of the provisions* of the *sub-title* under which it is codified with respect to *any road or roads* within the county. At the time of the amendment and re-enactment of this section in 1910, the other statutory provisions defining the powers and duties of the defendants in relation to the construction of a general system of State highways had been incorporated in the same Article of the Code under the same sub-title by Chapter 141 of the Acts of 1908. The term "sub-title" as used in the provision quoted may be given its ordinary application consistently with the purpose and effect of the road law as a whole, and we find no occasion, therefore, to restrict or qualify its meaning. It is clear that the present suit relates to an alleged violation of the provisions of the sub-title in question in respect to the use of State funds upon roads in Baltimore county, and under the express terms of the statute the Circuit Court for that county is given jurisdiction to entertain the proceeding.

There can be no difficulty in recognizing the right of the plaintiffs as taxpayers of Baltimore county to maintain the suit. The principle is settled in this State that while individuals cannot sue to restrain alleged public wrongs unless they have a special interest requiring protection, yet if the unauthorized act complained of would result in an increase of taxation, those upon whom this burden would fall constitute a special class, with an interest distinct from that of the general public, and are entitled to seek relief by injunction. *Painter* v. *County Commissioners of Baltimore County,* 119 Md. 466; *Schley* v. *Lee,* 106 Md. 403; *Baltimore* v. *Keyser,* 72 Md. 108; *Baltimore* v. *Gill,* 31 Md. 395; *Kelly* v. *Baltimore,* 53 Md. 140. In the case before us it is charged that about $100,000.00 of the funds appropriated by law for the construction and maintenance of roads in

Baltimore county is being illegally diverted by the defendants to similar uses in other counties. The interest of Baltimore county taxpayers in such a subject-matter is obvious. If this large fund is applied upon the roads of the county, the charge upon the county treasury for road maintenance will be reduced to the extent of the mileage thus improved. There is consequently an appreciable relation between the alleged diversion of the fund and the taxation to which the plaintiffs are subject on account of the ordinary road levy of the county, and we can have no hesitation in holding, upon the authorities cited, that the Court below had jurisdiction to hear and determine the suit at the plaintiffs' instance.

The argument was mainly directed to the question raised by the demurrer as to whether the Commission, in its use of the $300,000.00 apportionment, may lawfully apply about $100,000.00 to cover expenditures it has already made upon Baltimore county roads in excess of the County's share of the fund appropriated by the earlier Act. It being conceded that the amount to which the county was entitled on the basis of its road mileage, out of the $5,000,000.00 road fund, has been over-paid by the Commission to the extent indicated, in the improvement of roads in the county, the inquiry is whether this inequality must be disregarded, or is properly subject to correction in the application of the fund last provided. The plaintiffs insist that the direction for the apportionment and prompt use of $300,000.00 in Baltimore county is entirely inconsistent with the theory that a part of the amount should be available to adjust an over-payment on account of the prior allotment. This contention is unquestionably sound with respect to the half of the fund expressly required to be promptly expended on the Baltimore and Yorktown road, but the Act is not equally specific in its terms as to the disposition of the other half of the fund. This is to be merely "apportioned and used promptly in Baltimore county." The question to be determined, therefore, is whether the prompt use of this half of the fund may legitimately include its partial application to the re-payment

of sums expended upon roads of Baltimore county out of shares of the general road loan to which other counties are entitled.

As already noted, the Act of 1912 provides that the fund of $2,625,000.00 to which it refers, including the $300,-000.00 for Baltimore county, shall be used "in the furtherance of the purposes for which the State Roads Commission was created and in the same manner as the State Roads Loan of $5,000,000.00" authorized by the Act of 1908. The last mentioned Act contemplated the construction of a general system of State roads according to plans to be determined by the Commission. It directed that the Commission should reach its conclusion as to the selection of the roads to be improved by May 1, 1909, and should on or before that date file with the County Commissioners of each county, for public inspection, a certified copy of a map of the State showing plainly the adopted system of main roads to be improved under the Act. It was further enacted that the general system of public roads thus provided for should be completed by the Commission as soon as feasible, but in any event within seven years from July 1, 1908, and that the cost should not exceed $5,000,000.00, of which not more than $1,000,000.00 should be spent in any one year. Reference has been made to the provision for the apportionment of these funds among the various counties on the basis of their existing road mileage. The law declared that this provision was not intended to require the expenditure of a certain proportion every year in each county, but that the purpose was to eventually ensure a fair distribution according to the method prescribed. It has been further observed that the fund now in dispute is part of a loan explicitly stated by the Legislature to be authorized "in order to complete the construction of the State public roads as provided" in the prior Act. There is the plainest possible indication, therefore, of a legislative intent that the second fund should simply serve to supplement the first in accomplishing the single purpose of accomplishing within a limited time a State

highway system selected and defined with a general view to
an apportionment of its benefits among all the counties upon
the basis of public road mileage.   This being the manifest
design of the Act of 1912 there can be no doubt that so far
as the allotments on the mileage basis to the other counties
are concerned the funds appropriated by the Act would be
applicable to a proper adjustment of their respective ac-
counts so that a fair distribution in proportion to road mile-
age should be eventually secured.   This was the precise
theory of the original statute in declaring that the funds
need not be currently expended in the several counties from
year to year in the proportions mentioned, but that the ulti-
mate result should show a fair distribution to have been made
in pursuance of the designated mode of apportionment.   If
Baltimore county had been awarded by the Act of 1912 only
the amount to which its road mileage would have entitled it,
there could be no doubt that the Commission in using the
fund so allotted would be required to take into consideration
the payments made out of the original loan in excess of the
County's share for the improvement of its roads.   The
eventual fair distribution in proportion to mileage would
obviously not be accomplished if it appeared in the final ac-
counting that one of the counties had received $100,000.00
more than its intended share of the common fund.   As the
proceeds of the supplemental loan were distinctly declared
to be applicable in the same manner and to the same purpose
as the $5,000,000.00 provided in the first instance, and as
the appropriations from that loan were made eventually ad-
justable so as to secure a fair and uniform apportionment in
the indicated ratio to the various territorial divisions of
the State, the conclusion is unavoidable that the additional
allotments under the Act of 1912 were intended to be sub-
ject to the same adjustment and application in order that
the general and consistent theory of the legislation might
be gratified.

The apportionment to Baltimore county by the Act of
1912, except as to the half of the fund devoted to a desig-

nated road, differs from the appropriation for other counties
only in the fact that it exceeds the stated ratio of distribu-
tion.    The direction for the *prompt use* of the specified sum
in Baltimore county is simply in accord with the general pro-
vision that the funds of which it forms a part shall be ex-
pended by the Commission "as rapidly as it may economi-
cally do in order to complete as quickly as possible the sys-
tem of roads undertaken to be constructed by the State."
Inasmuch as the use thus generally contemplated by the
statute is not only consistent with but necessarily involves
the ultimate adjustment, according to the prescribed basis
of distribution, of the shares intended for the different coun-
ties, the plaintiffs' contention is left to depend upon the mere
fact that the Legislature has directed a *specific sum* rather
than a *defined proportion* of the additional road fund to be
used in Baltimore county.    We have been unable to find in
this circumstance a sufficient reason for adopting a construc-
tion of the statutes before us which would be contrary to
their general purpose and would prevent the eventual fair
distribution for which they provide.    If the view of the
appellee should be accepted, the result would be not only to
assure to Baltimore county the benefit of approximately
$100,000.00 in excess of the share to which it is entitled out
of the funds at the disposal of the Commission, but also to
curtail to the same extent the road improvements designed
for other counties under this legislation.

It has been suggested that the Act of 1912 may have in-
tended a special advantage to Baltimore county in the allot-
ment of the supplemental funds because that county, by
reason of the greater value of its assessable property, makes
a larger contribution than the others of the State road tax.
This consideration does not affect the purpose of the statute
as disclosed by its terms.    The general basis of apportion-
ment adopted was *road mileage* and not *taxable values.*    If
the latter measure of allotment had been selected, the results
would have differed materially for *all* the counties, and Bal-

timore City, would have had the benefit of more than one-half of the entire fund.

It is stated also that at the time of the passage of the Act of 1912 the Legislature had full information, communicated by the Governor, as to the over-payment, out of the $5,000,-000.00 loan, for road work in Baltimore county. This may have been an inducement for increasing that County's share of the new loan, but it does not indicate that the prior expenditures in the county should be disregarded in the application of the fund.

In our opinion the apportionment out of the supplemental loan for use in Baltimore county is lawfully applicable in part to the reimbursement of the Commission for road construction heretofore done in that county in excess of its due proportion of the original fund.

We have thus expressed our views on the question argued, but inasmuch as it appears that the plaintiffs do not know how much has already been over-drawn, and as there should be an opportunity to have that question determined, the cause will be remanded in order that the bill may be amended so as to require the defendants to answer and disclose the amounts claimed by them to have been over-drawn.

*Order reversed with costs to the appellants*
*and cause remanded.*