## MAYOR AND CITY COUNCIL OF BALTIMORE

*vs.*

## GEORGE WEEMS WILLIAMS ET AL., CONSTITUTING THE BOARD OF PARK COMMISSIONERS.

*Constitutional law*: section 29, Article 3; title and subject of
statute. *Park Fund of Baltimore City*: to be applied by
Park Board: Chapter 109 of the Acts of 1900, in
so far as it affects Park Fund, unconstitutional.
Public Local Code for Baltimore City: 1906;
no legal sanction; its provisions not rati-
fied by mere reference in sub-
sequent statutes.

Chapter 109 of the Acts of 1900 (attempting, among other
things, to prevent the Park Board of Baltimore City from
spending any part of the Park Fund, unless authorized by the
Board of Estimates, etc.), by its title declares it to be for the
repeal and re-enactment, with amendments, of sections 10, 57,
59, 77 and 176 of the Acts of 1898, Chapter 123, entitled "City
of Baltimore," sub-title "Charter"; the enacting clause repeals
and re-enacts the same sections, with amendments, etc., in the
usual form; but the body of the Act amends section 97 of the
Acts of 1898, affecting the management, control or distribution
of the *Park Fund,* and the Act of 1900 is therefore unconstitu-
tional so far as concerns the amendment of the said section 97.

p. 515

In order to comply with section 29 of Article 3 of the Consti-
tution, relating to the title and subject-matter of statutes, while
the title need not give an abstract of the Act, yet it must suffi-
ciently describe the subject-matter of the legislation, and must
not be misleading by apparently limiting the enactment to a
much narrower scope than that covered by the body of the Act.

pp. 511-512

The fact that the Board of Park Commissioners, since the passage of the Act of 1900, did submit their estimates to the Board of Estimates, and spent no moneys not so submitted and approved of by the Board of Estimates, does not estop the Park Commissioners from claiming the right to an injunction to restrain the Mayor and City Council from diverting any part of the Park Fund to other purposes.                    p. 515

The Public Local Code of 1906 has no legislative sanction, and mere reference to its articles, in subsequent statutes, that have since been codified, do not have the effect of giving such sanction to its provisions.                    p. 516

The Park Fund of Baltimore City, under the existing laws of the State, is to be applied to park purposes only, and to be expended and distributed for such purposes by the Board of Park Commissioners.                    p. 516

*Decided January 12th, 1915.*

Appeal from Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*S. S. Field, City Solicitor for Baltimore City* (with whom was *George A. Frick* on the brief), for the appellant.

*George Weems Williams,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This appeal is from a decree permanently enjoining the appellants from using, or permitting to be used, any part of the fund known as the "Park Fund," or of the Park Tax for other than park purposes, and from allowing said Park

Fund or Park Tax, or any part thereof, to be distributed except by the Board of Park Commissioners of the City of Baltimore; and ordering and decreeing that the appellants replace upon the books of the city, to the credit of said Board of Park Commissioners, the entire amount of money standing to the credit of said board as of December 31st, 1913, less any sums that have been paid since said date on the order of said Board of Park Commissioners for park purposes.

By an ordinance of the Mayor and City Council of Baltimore (No. 44) passed on the 28th day of March, 1859, an association was empowered to lay tracks for a city passenger railway upon certain streets of the city. The ordinance provided that the treasurer of such association, for the rights and privileges thus granted it, should pay to the City Register, quarterly, one-fifth of the gross receipts accruing from the passenger travel upon said road, "the same to be applied to the establishment and improvement of the city boundary avenue, * * * and to the location of such park or parks as may be determined upon by the Mayor and City Council of Baltimore for the benefit of the people of said city."

The Mayor and City Council, however, were given the power, upon the completion of said improvements, "to reduce the rate of fare on passenger travel to such limit within the range of one-fifth of the gross receipts of said road, as they may deem expedient and advisable, the city at the same time relinquishing her interest in the receipts from said road to the extent of said reduction on said fare."

By a resolution subsequently passed by the Mayor and City Council on the 4th day of June, 1860, the Mayor was given the authority to appoint a commission, consisting of four persons, known thereafter as the Park Commission, to select and purchase site or sites for the proposed park or parks. This commission was appointed, and, thereafter, on the 21st day of July, 1860, an ordinance (No. 60) was passed containing, among others, the following provisions:

"Sec. 2. *And be it enacted and ordained,* That the revenue derived and to be derived by the Mayor and City Council of Baltimore from the city passenger railways be and the same is hereby pledged and set apart for the payment of the interest on the certificates of stock to be issued under this ordinance.

"Sec. 3. *And be it enacted and ordained,* That one-fifth of the revenue aforesaid remaining after the payment of interest aforesaid, shall be invested by the register in stocks of the City of Baltimore, as a sinking fund for the redemption of the stock created by this ordinance.

"Sec. 4. *And be it enacted and ordained,* That the four-fifths of the said revenue shall be paid by the register, on the order of said commission, as the said revenue shall be received, for the improvement and maintenance of the park or parks aforesaid."

The aforegoing resolution and ordinance, passed on the said 4th day of June and the 21st day of July, respectively, were subsequently confirmed by the Act of the General Assembly of Maryland passed at its January Session, 1862, Chapter 29. This Act provided that all acts then done or which might thereafter be done "by the Mayor and City Council, or other officers of said city, or by the Park Commissioners acting under the provisions of said resolution and ordinance, shall have the same effect as if the said Mayor and City Council, prior to the passage of the said resolution and ordinance, had been expressly empowered by an Act of the General Assembly of Maryland, to enact a resolution and ordinance, in the precise terms of said resolution and ordinance, and to provide for carrying the same into effect." This Act likewise gave to the Park Commissioners power to pass "rules and regulations for the government and the preservation of order within the said parks, as they may deem expedient," and to prescribe fines to be imposed for all violations of such rules and regulations, such fines, when

imposed and collected, to be "appropriated to the purposes of said parks." The said resolution and ordinance were also expressly confirmed by sub-section 16 of section 6 of the present City Charter, and to which reference will hereafter be more fully made.

By Chapter 71 of the Acts of 1862, the above-mentioned association, to which the franchises and privileges aforesaid were granted, was incorporated as the Baltimore City Passenger Railway Company, and in the corporation so formed the Act vested all the rights, powers and privileges that were granted to the aforesaid association by said Ordinance No. 44, approved on March 28th, 1859, upon the terms and conditions, and subject to the limitations and restrictions therein contained.

In this Act we find the provision, "That the corporation hereby created be and they are hereby required to pay over to the register of the City of Baltimore the one-fifth portion of the whole passenger receipts of this corporation, at or before the stated periods named in the aforesaid recited ordinance of the City of Baltimore."

Franchises and privileges similar to those granted under Ordinance No. 44 aforesaid were, from time to time, granted by the Mayor and City Council to other associations and corporations to lay tracks in the bed of other streets in the city, subject, however, to the requirement that they pay unto the city one-fifth of the gross receipts from passenger travel for park purposes.

The payment by said city railway companies of twenty *per cent* of the gross receipts from passenger travel continued until the passage of the ordinance (No. 48) of June 9th, 1874, which reduced the amount to be paid by them out of such gross receipts to 12 *per cent,* and the payment of this portion of the gross receipts to the city continued until the passage of the Act of 1882, Ch. 229. That statute reduced the charge for each passenger over the age of 12 years to five cents, and for each passenger between the age of four and

twelve to three cents, and provided "that in lieu and substitution of the twelve *per cent* tax now imposed upon and payable by the said several pasenger horse railway companies mentioned in the first section of this Act, that the said several passenger horse railway companies shall pay to the Mayor and City Council of Baltimore a tax upon their gross receipts of nine *per cent,* to be paid at the same time and in the same manner as the tax of twelve *per cent* is now paid by said companies." This Act is now found in the City Code of 1906, section 797, in the following language: "The said several passenger street railway companies shall pay to the Mayor and City Council of Baltimore a tax upon their gross receipts of nine *per cent,* in quarterly instalments, on the first day of January, April, July and October, in each year."

Sub-section 16 of section 6 of the present City Charter, which we have already referred to as confirming the aforesaid resolution of June 4th, 1860, and the ordinance approved July 21st, especially provided, "That all the rights, privileges and authority heretofore granted by ordinance, to the Park Commissioners, are hereby transferred to the Board of Park Commissioners"—Section 90 of the Charter.

The powers and duties of the Board of Park Commissioners, in addition to those transferred to it under the aforesaid sub-section 16 of the Charter, are stated in the succeeding sections 91 to 97, inclusive. In the last of these sections (section 97) as passed by the General Assembly of Maryland at its January Session, 1898, it is provided:

> "The said Board of Park Commissioners shall have full power to employ and compensate all persons, whom, in its judgment, it may deem proper, in maintaining and supporting such parks, squares, springs and monuments, or any other buildings, collection, garden or reservation provided for in this Article. The distribution of the Park Fund for the maintenance of the different parks and squares shall be made by the Park Commissioners."

By the Act of 1900, Chapter 109, said section 97 of the
Charter, together with sections 10, 37, 59, 77 and 176 there-
of, was repealed and re-enacted with amendments. Section
97 was amended by adding thereto the following:

> "Provided, nothing contained in this section or else-
> where in this Article shall be taken or construed to
> exempt the said Board of Park Commissioners from a
> full compliance with all the requirements of section
> 36 of this Article, and the said Board of Park Com-
> missioners shall spend no part of said Park Fund un-
> less such expenditure is authorized and included in
> the annual ordinance of estimates; and provided, fur-
> ther, the Board of Park Commissioners who go into
> office on the first day of March, in the year 1900, shall
> make such report to the Board of Estimates as soon
> thereafter as possible, which report shall include all
> expenditures to be made by said Board of Park Com-
> missioners for the remainder of the current fiscal year,
> and the Board of Estimates shall prepare and submit
> to the City Council a supplemental ordinance of esti-
> mates, to include the amount which the said Board of
> Estimates may deem proper to be spent by said Board
> of Park Commissioners for the remainder of said cur-
> rent fiscal year."

Section 36 of the Charter, to which reference is made in
the aforegoing section 97, creates what is known as the Board
of Estimates, consisting of the Mayor, City Solicitor, Comp-
troller, President of the Second Branch of City Council,
and President of the Board of Public Improvements. They
are required to meet annually, between the days therein
named, and make out "three lists of moneys to be appropri-
ated by the City Council for the next ensuing fiscal year."
These lists are known as, first, the departmental list of esti-
mates, consisting of the amounts required to be annually ap-
propriated to pay the expenses of conducting the public busi-
ness; second, the estimates for new improvements, being a
list containing all amounts to be appropriated for new im-

provements to be constructed by any department of the city; third, estimates for annual appropriations, which consists of the amounts required to be annually appropriated to charities, educational, benevolent or reformatory institutions of the city, etc.

To enable the Board to make out the first of these lists the "President of the two branches of City Council and the heads of the departments, heads of sub-departments, municipal officers not embraced in a department, and special commissioners or boards, shall * * * send to the said Board, in writing, estimates of the amounts needed for the conduct, respectively, of the City Council, departments, sub-departments, municipal officers, not embraced in a department, commissioners or boards for the next ensuing year. Such estimates shall be verified by the oath or affirmation of persons making them," specifying in detail the objects thereof. And to enable the said Board of Estimates to make out the list of estimates for the new improvements, the above named heads of departments, etc., are likewise required to file with the Board "their recommendations as to the amounts which they may consider will be needed in their respective departments for improvements." Upon the completion of these lists an ordinance is drafted and submitted to the City Council at a meeting to be called by the Mayor, which is to hold daily sessions for its consideration until an ordinance is passed fixing and establishing the appropriations for the succeeding fiscal year, and when so passed and approved by the Mayor it is known as the Ordinance of Estimates for such year.

The section then provides that in case of any deficiency there shall be a *pro rata* abatement of all appropriations (except as to those mentioned therein) and "in case of any surplus arising in any fiscal year, by reason of an excess of income received from the estimated revenue over the expenditures for such year, the said surplus shall become a part of the annual revenue of the city and shall be available for the general expenses of the city for the next ensuing fiscal year."

The record discloses that after the expenditure for park purposes of the appropriation contained in the Ordinance of Estimates for the year ending December 31st, 1913, there remained to the credit of the Board of Park Commissioners, on the books of the City Comptroller, the sum of $12,716.60. This account the Comptroller, acting under the instructions of the Board of Estimates, transferred from the credit of the Park Board to the credit of the general treasury of the city, but subsequently a part of this sum, $7,532.87, was re-transferred to the credit of the Park Board; the balance of the amount, $5,183.73, was retained to the credit of the general revenue of the city.

It was to restrain the appellants from expending the amount so retained by them to be expended for general purposes of the city government, and to require them to replace the said amount to the credit of the Board of Park Commissioners, that the injunction in this case was sought and obtained.

It is contended by the appellees (plaintiff below) :

1st. That the Act of 1900, Chapter 109, falls within the prohibition of that clause of section 29 of Article 3 of the State Constitution, which provides that "every law enacted by the General Assembly shall embrace but one subject and that shall be described in the title," and that said Act, in respect to section 97, is therefore void, and that we, in reaching our conclusion upon the question presented by this appeal, are to consider the law as it stood prior to the passage of such Act, which, as they contend, does not authorize the diversion of the fund in question as here attempted by the appellants, but that it vests in them alone, the authority to expend and distribute such fund for park purposes only, as mentioned and defined in the various statutes and ordinances having relation to the same.

2nd. That if it should be held that the aforesaid Act of 1900 is constitutional, it nevertheless does not authorize the expenditure of any part of said fund for other than park

purposes, although the amount of such fund to be expended for such purposes may, by said statute, be under the power and control of the Board of Estimates.

We will first consider the question as to the validity of the statute.

The title of the Act is

"An Act to repeal and re-enact with amendments sections 10, 37, 59, 77 and 176 of the Act of 1898, Chapter one hundred and twenty-three, entitled 'City of Baltimore,' sub-title 'Charter.'"

The enacting clause is as follows:

"Section 1. *Be it enacted by the General Assembly of Maryland,* That sections 10, 37, 59, 77 and 176 of the Act of 1898, Chapter one hundred and twenty-three, entitled 'City of Baltimore,' sub-title 'Charter,' be and the same are hereby repealed and re-enacted with amendments so as to read as follows."

Nowhere is any reference or mention made, either in the title or in the enacting clause, to section 97, but in the body of the Act it appears between sections 77 and 176, amending section 97 as passed by the Act of 1898, by adding thereto the language hereinbefore stated.

Of the sections repealed and re-enacted section 10 deals with the use of highways, section 37 with the granting of franchises to the Mayor and City Council, section 59 with the duties of the Collector of Water Rents and Licenses, section 77 provides for the appointment of a vaccine physician, and section 176 deals with the opening of streets. Section 97 was the only section that attempted in any way to deal with the management, control or distribution of the Park Fund, or that had any relation to or connection with the Board of Park Commissioners.

It has been invariably held that the title need not give an abstract of the Act, but it shall sufficiently describe the subject-matter of the legislation, and it must not be mislead

ing by apparently limiting the enactment to a much narrower scope than the body of the Act is made to compass. *Luman* v. *Hitchens Bros. Co.,* 90 Md. 14-23.

In the case of *Annapolis* v. *State,* 30 Md. 112, the subject-matter of legislation was the charter of a municipal corporation, the City of Annapolis, embracing its powers, rights and duties. The title of the Act was, "An Act to amend and alter the charter of the City of Annapolis." This Court there held the title sufficient.

That case, however, differs from the case before us in that the title was broader and more comprehensive and fully covered the subject-matter of the legislation. In the present case attention is specially directed to certain sections of the charter of the City of Baltimore that are repealed and re-enacted, and it is to these sections that attention is limited. The Act, however, does not stop there, but repeals and re-enacts a section which is not mentioned in the title and to which neither the attention of the members of the Legislature nor the public was directed.

The case of *Levin* v. *Hewes,* 118 Md. 632, which it seems is largely relied upon by the appellants in support of the validity of this Act, also differs from the present case. In that case the body of the Act (Acts 1912, Ch. 823) was not at variance with its title, but there were discrepancies between the enacting clause and the title. The title provided for the repeal of sec. 629 of Art. 4 of the Code of Pub. Local Laws of Baltimore, etc., title "City of Baltimore," sub-title "Justices of the Peace and Constables," the repeal and re-enactment with amendments of sec. 206, sub-title "Constables," and six other designated sections of Article 4, sub-title "Justices of the Peace and Constables," and to add three additional sections designated as 625-A, 625-B and 625-C. By the enacting clause section 629 was not only repealed, but re-enacted with amendments, and no reference at all is made to the six sections named in the title that were to be repealed and re-enacted with amendments, or to the three additional sections

that were to be enacted. Upon an examination of the Act no amended section 629 appears therein, but all the other sections mentioned in the title, either to be repealed and re-enacted with amendments or to be enacted as additional sections, are found in the body of the Act as provided for by the title, and in this connection the Court there said: "In this case the title of the Act apprised both the members of the Legislature and the public that a number of sections relating to justices of the peace and constables in the City of Baltimore were proposed to be repealed, and that some of them at least were to be re-enacted with amendments, and three additional sections were to be added. That was sufficient to put anyone who was interested in the subject matter upon inquiry."

In the case before us, however, no reference is made to section 97. There was nothing in the title to direct attention to any legislation other than that affecting the particular sections to which the title referred, and, as we have already said, it was to these sections alone that the attention of the legislators and the public was directed.

Other cases are cited to us by the appellants in support of the validity of this Act, but we think it unnecessary to allude to and comment upon them, as they are readily distinguishable from the present case.

The case most like the one now before us, and one that is controlling in this case, is *Kafka* v. *Wilkinson,* 99 Md. 238. In that case the Act was assailed because, as it was claimed, it contravened the provision of the Constitution that is now before us. The title of the Act in that case was "An Act to repeal sections 122 and 128 of Article 23 of the Code of Public General Laws, title 'Corporations,' sub-title 'Insurance,' and to re-enact the same with amendments; and to add an additional section to said Article, to be known as section 122-A; and to repeal section 143-EI of said article." In the body of the Act, section 143-EI was repealed, sections 122 and 128 were repealed and re-enacted, and the additional section to be known as 122-A enacted, all of which was provided

for in the title, but in addition to this there appears in the body of the Act a section known as 122-B, which was not referred to or mentioned either in the title or the enacting clause of the Act. This Court in that case said: "The title of the statute involved in the case at bar is misleading and serves to divert attention from what is to follow in the enactment. It is indicated in the title that the purpose of the law is to repeal and re-enact two sections of Article 23 with amendments thereto; to add one additional section to said Article which is numbered and specified; and to repeal absolutely one other section that is designated and specified. In the body of the Act all this is done as indicated; but in addition there is legislation of a most important character embodied in an entirely independent section designated by number, as it is to appear in the Code, of which the title of the Act not only gives no notice whatever, but from which it serves to divert attention by professing to indicate all of the legislation that is to be attempted. If this shall be sanctioned, an easy means will be afforded to escape and avoid the effect of the constitutional provision in question. If one section can be enacted to become a part of an article of the Code in this way then any number of sections could be added in the same way; and it would only be necessary in effecting changes in the provisions of the Code to indicate by the title of the Act, by which such changes are to be made, that a particular section of the Code is to be repealed and re-enacted; and that being done, in the body of the Act to follow it with any number of sections enacting new legislation of which no suggestion would be afforded by the title. Thus there would be an opportunity for foisting upon any Act of Assembly matter of legislation of which neither the Legislature nor the public would have any notice; and we would be exposed to the very evil which the Constitution, by the provision here in question, sought to prevent."

What the learned judge in that case said is equally applicable to this case. In that case there was an enactment of a section not mentioned or referred to either in the title or en-

acting clause. In this case there is a *repeal* and re-enactment, with amendments, of a section not mentioned and referred to in either the title or enacting clause. If it was a contravention of the provision of the Constitution to enact an additional section under the circumstances there mentioned, it is certainly a contravention of such provision of the Constitution to *repeal and re-enact,* with amendments, a section under like circumstances. See also *Stiefel et al. v. Md. Inst. for the Instruction of the Blind,* 61 Md. 144.

It is urged, however, by the appellants that this Act should not now be decided invalid, even though it be held to violate the aforegoing provisions of the Constitution, because of its recognition and treatment as a valid statute, (1) by the appellees and their predecessors in office, who have, since the passage of the Act to the present time, complied with the provisions of the statute in submitting the estimate required under the statute to the Board of Estimates; and (2) by the Mayor and City Council in the passage of the ordinance provided for in the Act and other ordinances subsequently passed.

It is admitted, as shown by the record, that the Board of Park Commissioners have each year since the passage of the Act submitted to the Board of Estimates the estimate mentioned in section 36 of the Charter, and that the moneys expended by them were limited to those named in the Ordinance of Estimates, but never during the period between the passage of the Act of 1900 and the ending of the year 1913, was any effort made on the part of the city to consider and treat an unused and unexpended money known as the Park Fund, appearing upon the books of the city to the credit of the Board of Park Commissioners, as a fund that could be diverted under said section 36 to the payment of the general expenses of the city government.

It was because of the effort of the city to divert such fund to the payment of such general expenses that the Board of Park Commissioners determined to resist the enforcement of the provisions of the statute as construed by the city, and from the record it would seem that the defect in title was

then discovered, and is now availed of to prevent what they regard a wrongful diversion of this fund.

We have been referred to no authorities, nor have we been able to find any, that support this contention of the appellants, and in the absence of such authorities we can not adopt the contention of the appellants that the statute, otherwise invalid, must now be regarded as valid because so recognized and treated.

It is also contended by the appellants that this invalid statute has become valid because found in the Public Local Code of 1906, which Code has no legislative sanction except such as is claimed for it by the appellants, which consists merely of reference to it by certain statutes that have been passed since its codification. Such reference, we think, could not have the force and effect of giving legislative sanction to its provisions.

Entertaining the views we have expressed, we feel constrained to pronounce section 97 of Chapter 109 of the Acts of 1900 void. The Act otherwise will stand and will have the same effect as if this section had not been incorporated in it.

We must, therefore, determine the question here presented upon the law as it stood prior to the passage of such Act.

We are not disposed to further prolong this opinion by a discussion of the effect of the various ordinances and statutes which have been passed in relation to the Park Fund or Park Tax, in reaching our conclusions upon this branch of the case. We have already lengthened this opinion by setting out very fully many of the ordinances and Acts which relate to the fund here involved, known as the Park Fund, which, in our opinion, fully establish the contention of the appellees that such a fund now exists and that it is, under the existing law of this State, to be applied, as it has always been, to park purposes only, and to be expended and distributed for such purposes by the Board of Park Commissioners, and the law must have been so construed by the city

officials who procured the passage of the said Act of 1900, Chapter 109, otherwise, the passage of such Act would seem to have been unnecessary.

We can not agree with the appellants that the effect of the Act of 1882, Chapter 229, was to change the status of this fund as to the purposes for which it should be expended or by whom it should be expended and distributed. The first section of the statute fixed and established the amount to be charged by the railway companies for the conveyance of passengers over its lines, and the second section provides "that in lieu and substitution of the twelve *per cent.* tax now imposed" upon the railway companies, they "shall pay to the Mayor and City Council of Baltimore a tax upon their gross receipts of nine per cent., to be paid at the same time and in the same manner as the tax of twelve per cent. is now paid by said companies."

Under this statute, the amount to be paid by the railway companies was reduced from twelve to nine per cent. of their gross receipts, and, as before, it was made payable to the City of Baltimore. This statute does not touch the manner of its expenditure—that is to say, for what purposes or by whom it shall be expended. It remained, as before, to be expended for park purposes and by the Board of Park Commissioners.

Entertaining the views we do of this case, it is unnecessary for us, of course, to pass upon the other contention of the appellees. We will, therefore, affirm the decree of the Court below.

*Decree affirmed, with costs to the appellees.*