EDWARD HANLON, ET AL. *v.* ALBERT A. LEVIN.

BALTIMORE BROADCASTING CORPORATION *v.* ALBERT A. LEVIN.

[Nos. 37, 38, April Term, 1935.]

*Decided May 22nd, 1935.*

The causes were argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHN-SON, JJ.

*R. E. Lee Marshall* and *Frank Driscoll,* submitting on brief, for the Board of Park Commissioners, appellants.

*J. Purdon Wright* and *W. Frank Every,* for the Baltimore Broadcasting Corporation, appellant.

*Leonard Weinberg* and *Albert A. Levin,* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

Albert A. Levin, a resident and taxpayer of Baltimore City, filed a bill of complaint against the members of the board of park commissioners of said city and the Baltimore Broadcasting Corporation, for the purpose of having declared null and void a certain rental agreement previously executed between the said defendants, and to have them permanently restrained from acting under said agreement in erecting, constructing and maintaining a certain broadcasting tower and building in Druid Hill Park, one of the public parks of Baltimore City, purchased by the city in 1860, and previously dedicated to the public use. A copy of the lease between the two defendants was filed as an exhibit and made a part of the bill of complaint, from a consideration of which it appears that a parcel of land seventy-five feet by seventy-five feet in Druid Hill Park was leased by the park board to the broadcasting corporation, upon which the latter was to erect a broadcast tower and building, which were to be used in connection with Radio Station WCBM. The lease was for a term of ten years, with renewal provisions contained therein, and its consideration was stated as follows: "That the Board of Park Commissioners and the Mayor of the City of Baltimore shall have free time at hours appropriate to the purpose to be served, for broadcasting information of a civic, educational and non-political nature over Radio Station WCBM."

Separate demurrers were filed by each of the defendants to the bill of complaint, and from decrees of the chancellor overruling such demurrers both defendants have appealed. In determining the correctness of these decrees, recourse must be had to the Baltimore City

Charter, since by the demurrers the lease and its execution and all allegations of the bill of complaint which are relevant and well pleaded are admitted. *Miller's Equity Proc.*, page 171, par. 133; *Miller v. Baltimore County Marble Co.*, 52 Md. 642, 644; *Textor v. Shipley*, 77 Md. 473, 474, 26 A. 1019, 28 A. 1060; *American-Stewart Distillery v. Distilling Co.*, 168 Md. 212, 177 A. 473, 474.

However, it must not be overlooked that municipal corporations have only such powers as have been conferred upon them by the Legislature, and these are to be strictly construed. To doubt such power in a given case is to deny its existence. *Rushe v. Hyattsville*, 116 Md. 122, 81 A. 278; *Heiskell v. Baltimore*, 65 Md. 125, 4 A. 116; *Baltimore v. Gill*, 31 Md. 375; *St. Mary's Industrial School v. Brown*, 45 Md. 310.

It is worthy of notice that the contract in question, if breached by the broadcasting corporation, could not be specifically enforced at the suit of the park board, since its consideration is too vague, uncertain, and indefinite. And it is at least open to serious doubt whether or not the same reasons would not also prevent recovery in a suit at law. *Warren Mfg. Co. v. Baltimore*, 119 Md. 188, 86 A. 502; *Lucas v. Long*, 125 Md. 420, 94 A. 12; *Rogers v. Dorrance*, 140 Md. 419, 117 A. 564; *King v. Kaiser*, 126 Md. 213, 94 A. 780; *Thompson v. Thomas & Thompson Co.*, 132 Md. 483, 104 A. 49; *Hearn v. Ruark*, 148 Md. 354, 129 A. 366; *Powell v. Moody*, 153 Md. 62, 137 A. 477.

The Mayor and City Council of Baltimore is given power "to establish, maintain, control and regulate parks or squares in the City of Baltimore for the recreation and benefit of its citizens." Baltimore City Charter, 1927 (see Code Pub. Loc. Laws 1930, art. 4) sec. 6 (16). By section 31 of the Charter, the executive power of the city is declared to be vested in "the Mayor, the departments, sub-departments, municipal officers not embraced in a department" therein provided for, and under paragraph 5 of said section is listed the department of parks and squares as being composed of "Board of Park Commissioners." It may be inferred from the language used

that such parks are vested in the city and department of parks and squares, yet the latter is but an agency of the city, with "charge and control" of the parks so owned by the city. By section 1 of the Charter, the city is empowered to purchase and hold real estate, but under section 7 thereof, it is declared that the title of the city in and to its water front, wharf property, land under water, public landing, wharves and docks, highways, avenues, streets and lanes, alleys and parks, is inalienable. Under section 8, the city is permitted to grant, subject to certain limitations and conditions contained in the Charter, specific franchises or rights in or relating to any of the public "property or places" mentioned in section 7, but such grants must be in compliance with all requirements of the Charter and the terms and conditions thereof must first have been authorized and set forth in an ordinance passed by the city. By section 10 of the Charter, it is provided that before any grant of a franchise or the right to use any public property shall be given, an advertisement of the proposed action must be published in a daily newspaper, and by section 37, such franchise to use public property mentioned in section 7 (which specifically enumerates parks) must be embodied in the form of an ordinance containing all the terms and conditions required by the provisions of the Charter, which ordinance, after its introduction and first reading in the City Council, must be referred to the board of estimates, who are charged with the duty of making diligent inquiry as to the terms and conditions of the ordinance, and may increase the compensation provided for therein. Assuming the aforegoing provisions respecting the leasing of property to have been complied with by the city, even then it cannot rent public property, unless it be no longer needed for public use. Baltimore City Charter, sec. 13. So even if the property in question were no longer needed for public use, the Mayor and City Council of Baltimore could not, under the provisions above quoted, have validly entered into the lease in question, without giving the notice prescribed in section 10, and without having resorted to

the inquiry contemplated by section 37, and this seems to apply to a renewal lease. Section 12 of the Charter.

But, notwithstanding the board of park commissioners is a subdepartment of the city, the appointment of whose members is provided for by the Charter (section 25), it is contended that this agency has, with reference to the execution of leases of park property, broader powers than the city, and the argument is based upon the language of section 91 of the Charter, plus certain expressions used by this court in the *Williams* cases reported in 124 Md. 502, 92 A. 1066 and 128 Md. 140, 97 A. 140. The section in the Charter reads as follows: "The Board of Park Commissioners shall have charge and control of all public parks, squares, boulevards leading to parks, springs and monuments belonging to and controlled by or in the custody of the Mayor and City Council of Baltimore; and it shall have power and authority to rent or lease property, which it may acquire on behalf of the city, whether by purchase, condemnation or otherwise, at such reasonable rentals, and for such terms as to the said Board may seem proper." But this section must be read in connection with the other sections of the charter above referred to, and from a consideration of all such provisions the legislative intent must be determined; and this may be found either by express declaration or by the general scope and policy of the act. *Graham, Secretary of State, v. Wellington,* 121 Md. 656, 89 A. 232; 12 *C. J.,* page 707; *Dyer v. Bayne,* 54 Md. 87.

By express language, authority to the park board for leasing property is limited to that "which it may acquire on behalf of the city," and it is admitted that Druid Hill Park was acquired by the city and not by the park board, but even if this were not true, would the park board, under this section, have authority to lease park property which had been dedicated to the public use? To answer this question in the affirmative, we must conclude that the Legislature intended the board to have broader powers in respect to leasing park property than were extended to the Mayor and City Council of Baltimore, an unreason-

able presumption, since if under section 91 the park board had unlimited power in respect to leasing property, it would have been entirely useless to place in the Charter so many restraints upon the city with respect to the same subject. Furthermore, in ascertaining the legislative intent under section 91, the language of sections 93A and 96, conferring certain authority upon the board of park commissioners, is enlightening, and, we think, strong evidence that the Legislature did not by section 91 intend to confer the power which we are asked to hold the park board has, because, if such authority had already been granted, why was it necessary in succeeding sections to deal further with the matter by granting powers which were delegated in a previous section?

In *People v. Park & Ocean R. Co.,* 76 Cal. 156, 18 P. 141, the park commission, which was authorized by law to take charge of the park, granted an easement to the railroad company, but it was held that under an act of Congress and an act of the state legislature, the title to the property was in the city, dedicated to the use of the public, and a railroad was a purpresture, as it violated the dedication, the court saying: "A railroad unlawfully constructed in the Golden Gate Park, of San Francisco, is a purpresture, yet the title to the park is in the city and county of San Francisco in trust for the use of the public." See, also, 20 *R. C. L. "Nuisances,"* sec. 9; *Smith v. McDowell,* 148 Ill. 51, 35 N. E. 141.

The case last cited was viewed both as a vacating of so much public premises, which could only be done under formalities not observed, and as a purpresture, because, the streets having been laid out under legislative authority which defined and limited their use for street purposes by the public, a public trust for that purpose was created.

We hold, therefore, that section 91 was only intended to give authority to the park board to execute leases for property which it held for the city, but only so long as such property had not become a part of the public parks of the city, and therefore remained undedicated to the public use. If, after such property has been dedicated

to the public and become a part of its system of public parks, the park board can validly lease, as attempted in this case, a part of the park, the situation is entirely conceivable whereby additional leases may be executed, until the entire park may be occupied and controlled by private enterprise, thus destroying the purposes for which the parks were created. Appellees rely upon the cases of *Baltimore v. Williams*, 124 Md. 502, 92 A. 1066, and *Williams v. Baltimore*, 128 Md. 140, 97 A. 140, but we find nothing in those decisions which conflicts with the views herein expressed. The first case deals with the proposition that the special street railway tax authorized by the Charter had been dedicated to park purposes, and such taxes could not be commingled with other funds or applied to other purposes, and the attempt of the Legislature to authorize the board of estimates to pool such funds was unconstitutional, because of a defect in the title of the act. The other case is authority for the principle that to the park board and not to the board of estimates was intrusted the management and control of the parks, and arose by reason of the removal of a building from one part of the park to another. The power of management and control of the parks of Baltimore City conferred upon the members of the park board is far less comprehensive than the right of conveying such property by lease or otherwise.

Having decided that the board of park commissioners was without power or authority to enter into the lease in question, can their action be attacked by appellee? We think this question must be answered in the affirmative. He is a resident and taxpayer of Baltimore City, and equity will at his instance enjoin the conveyance or diversion to unlawful use of municipal property or funds. 19 *R. C. L.*, page 1164, par. 438. See, also, *Baltimore v. Gill*, 31 Md. 375; *St. Mary's Industrial School v. Brown*, 45 Md. 310; *Peter v. Prettyman*, 62 Md. 566; *Williams v. Baltimore*, 128 Md. 140, 97 A. 140; *Dillon, Municipal Corporations* (5th Ed.) vol. 4, sec. 1579.

His position is different from one who attempts to

enjoin a public nuisance, because in that case a plaintiff must show some special injury to himself besides that which is sustained by the general public. *Bauernschmidt v. Standard Oil Co.*, 153 Md. 647, 139 A. 531; *Turner v. King,* 117 Md. 403, 83 A. 649; *Weller, Chairman, v. Mueller,* 120 Md. 633, 87 A. 1045.

The decrees of the lower court must therefore be affirmed and causes remanded, in order that, if they desire to do so, appellants may be permitted to answer within such time as the chancellor may by order direct.

*Decrees affirmed, with costs, and causes remanded.*